UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated, *Plaintiff*, -against- AMERICAN HOME SHIELD CORPORATION, *Defendant*. | 1:10-cv-04014-FB-RER |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT
TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
(TB-6825)

Attorney for Plaintiff

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

FEDERAL STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATE STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   THIS COURT HAS SUBJECT-MATTER JURISDICTION

     A.   The Statutory-Damages Cap for Violations of Section 17529.5(a)(3) of
the California Business and Professions Code Limits the Recovery
of a Given Person or Entity, not the Total Liability of a Defendant . . . . . . . . . . 4

     B.   Plaintiff May Act *Pro Se* During the Pre–
Class-Certification Stage of this Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

         (i)   Another Judge of the Eastern District of New York Recently
Recognized that a *Pro Se* Litigant May Pursue a Putative
Class Action During the Pre–Class-Certification Stage . . . . . . . . . . . . . 6

         (ii)   During the Current Stage of this Action, Plaintiff
is Representing Only Himself, as is His Right
Under Both Statute and the Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 6

         (iii)   Because the Issue of Adequacy of Counsel is a Class-Certification
Issue, It Must be Addressed at the Class-Certification Stage . . . . . . . . . 8

         (iv)   A Ruling Based on the Adequacy-of-Counsel Requirement Prior
to the Class-Certification Stage Would Not Only be Based Solely
on the Unsupported Assumption that Plaintiff Will Seek to be
Appointed as Class Counsel and Therefore be Premature, But
Would Be Premature Even if Such Assumption Were Warranted . . . . . . 9

**TABLE OF CONTENTS (*Cont'd*)**

**Page**

II.  PLAINTIFF HAS STATED A CAUSE OF ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.  Under Section 17529.5(a)(3) of the California Business and
        Professions Code, a Hyperlink in an E-Mail Is Part of the E-Mail  . . . . . . . . . . 10

    B.  Plaintiff Has Alleged that the E-Mails at Issue Were
        Received by Him and the Other Putative Class Members . . . . . . . . . . . . . . . . . . 10

    C.  Whether a Recipient of an E-Mail Has a Cause of Action Under
        Section 17529.5(a)(3) of the California Business and Professions
        Code Does Not Depend on Whether He Was Actually Misled by it . . . . . . . . . . 12

    D.  The Liability of an Advertiser Under Section 17529.5(a)(3) of the California
        Business and Professions Code Does not Depend on Whether the Advertiser
        Was the Actual Sender of an E-Mail that Violated that Provision  . . . . . . . . . . 13

    E.  Although Plaintiff Has Satisfied the Heightened Pleading
        Standards of Rule 9(b), He Was Not Required to Do So . . . . . . . . . . . . . . . . . . 15

        (i)  Plaintiff Has Satisfied the Heightened Pleading Standards
              of Rule 9(b) of the Federal Rules of Civil Procedure  . . . . . . . . . . . . . . . 15

        (ii)  Rule 9(b) of the Federal Rules of Civil
             Procedure Does Not Apply to this Action . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>**TABLE OF AUTHORITIES**</u>

**Page**

**FEDERAL STATUTES**

Fed. R. Civ. P. 9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 16, 17, 18 19, 20, 21

Fed. R. Civ. P. 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 10

15 U.S.C. § 45(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15 U.S.C. § 1692, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

15 U.S.C. § 1051, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

15 U.S.C. § 7701, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 18, n.9, 19

28 U.S.C. § 1332(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

47 U.S.C. § 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, n.1

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17529.5(a)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**CASES**

**Page**

*Advanstar Communs., Inc. v. Dirt Motosports, Inc.*,
    2006 U.S. Dist. LEXIS 68720 (N.D.N.Y. Sept. 26, 2006)  . . . . . . . . . . . . . . . . . . . . . . . 18

*Asis Internet Services v. Optin Global, Inc.*,
    2008 WL 1902217 (N.D. Cal. Apr. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Asis Internet Services v. Subscriberbase, Inc.*,
    2009 U.S. Dist. LEXIS 112852 (N.D. Cal. Dec. 4, 2009) . . . . . . . . . . . . . . . . . . . . . . . 20

*Asis Internet Services v. Vistaprint USA, Inc.*,
    617 F.Supp.2d 989 (N.D. Calif. 2009)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF CONTENTS (*cont'd*)

Page

**CASES (*cont'd*)**

*Bank v. Hydra Group LLC*,
   2010 U.S. Dist. LEXIS 100436 (E.D.N.Y. Sept. 24, 2010),
   *rev'd*, 433 Fed. Appx. 50 (2nd Cir. 2011) (Summary Order)  . . . . . . . . . . . . . . . . . 4, 5, 5, n.2

*Bartlett v. Heibl*,
   128 F. 3d 497 (7th Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Betor v. Quantalytics, Inc.*,
   2003 WL 22407121 (Ohio Comm. Pls. Oct. 3, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 15, n.7

*Blair v. Maynard*,
   324 S.E.2d 391 (W. Va. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cersosimo v. Cersosimo*,
   449 A.2d 1026 (Conn. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Eternity Global Master Fund v. Morgan Guar. Trust*,
   375 F.3d 168 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Ewing v. Coca Cola Bottling Co. of New York, Inc.*,
   2001 WL 767070 (S.D.N.Y. June 25, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*FTC v. Communidyne, Inc.*,
   1993 W 558754 (N.D. Ill. Dec. 3, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*FTC v. Freecom Communs., Inc.*,
   401 F.3d 1192 (10th Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*FTC v. Medical Billers Network, Inc.*,
   543 F. Supp. 2d 283 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*FTC v. Nat'l Testing Servs., LLC*,
   2005 W 2000634 (M.D. Term. Aug. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*FTC v. Verity Int'l, Ltd.*,
   443 F.3d 48 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Gibson v. Chrysler Corp.*,
   261 F.3d 927 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF CONTENTS (*cont'd*)

**Page**

**CASES (*cont'd*)**

*Gordon v. Virtumundo, Inc.*,
2006 U.S. Dist. LEXIS 89494 (W.D. Wash. Dec. 8, 2006),
*summary judgment granted*, 2007 U.S. Dist. LEXIS 35544
(W.D. Wash. May 15, 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009) . . . . . . . . . . . . . . . 18, 19

*Hypertouch v. Azoogle*,
386 Fed. Appx. 701 (9th Cir. July 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hypertouch, Inc. v. Valueclick, Inc.*,
192 Cal.App.4th 805 (Calif. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Iannaccone v. Law*,
142 F.3d 553 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ilor, LLC v. Google, Inc.*,
631 F.3d 1372 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, n.5

*Jaffe v. Capital One Bank*,
2010 U.S. Dist. LEXIS 18117 (S.D.N.Y. Mar. 10, 2010) . . . . . . . . . . . . . . . . . 6, 7, 9, 10, n.4

*Matassarin v. Lynch*,
174 F.3d 549 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Morgan v. Credit Adjustment Bd., Inc.*,
999 F.Supp. 803 (E.D. Va. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Morgan v. Galilean Health Enterprises, Inc.*,
977 P.2d 357 (Okla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, n.7

*Morlan v. Universal Guar. Life Ins. Co.*,
298 F.3d 609 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Myers v. Trendwest Resorts, Inc.*,
56 Cal.Rptr.3d 501 (Calif. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Northwestern Mut. Life Ins. Co. v. Banc of America Securities LLC*,
254 F.Supp.2d 390 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, n.8

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF CONTENTS (*cont'd*)

**Page**

**CASES (*cont'd*)**

*Steinberg v. Nationwide Mutual Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Stern v. Gen. Elec. Co.*,
924 F.2d 472 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, n.8

*Uyeda v. J.A. Cambece Law Office, P.C.*,
2005 WL 1168421 (N.D. Cal. May 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Villano Inc. v. CBS, Inc.*,
176 F.R.D. 130 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    *Plaintiff*,<br><br>      -against-<br><br>AMERICAN HOME SHIELD CORPORATION,<br><br>                                      *Defendant*. | 1:10-cv-04014-FB-RER |

## **INTRODUCTION**

Plaintiff, Todd C. Bank, submits this Memorandum of Law in opposition to the motion by Defendant, American Home Shield Corporation, to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **SUMMARY OF ARGUMENT**

### **Point I**

### **This Court Has Subject-Matter Jurisdiction**

Defendant's objections to this Court's subject-matter jurisdiction are unfounded. Defendant's first argument is that, as a result of the million-dollars-per-incident statutory-damages cap for violations of Section 17529.5(a)(3) of the California Business and Professions Code ("CBPC"), the amount in controversy is one million dollars rather than the five million dollars required for diversity jurisdiction under 28 U.S.C. Section 1332(d), which is part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, Feb. 18, 2005, 119 Stat. 4 ("CAFA"). However, Defendant fails to note that the pendency of this very issue before the Second Circuit was the basis of a lengthy stay in the present case, and that the only reason the stay was lifted was because the Second Circuit reversed a District Court dismissal that had been based on precisely the argument that Defendant makes. The per-

1

incident limitation is a limitation on a given plaintiff's recover, and not a limitation on a defendant's total liability to all plaintiffs as a whole.

Defendant's second argument concerning subject-matter jurisdiction is that Plaintiff, as a *pro se* litigant, may not pursue this action on a class basis. If Defendant were correct, then the resulting dismissal of the class allegations would leave, in place, only Plaintiff's individual claims, which would be insufficient to confer subject-matter jurisdiction on this Court. However, Defendant's argument is premature, as Judge Gleeson recently recognized in another case in which Plaintiff commenced a *pro se* class action. The reasons that this issue is premature are that, first, a plaintiff who brings a putative class action represents only himself until and unless the class is certified. Second, Defendant's argument is a challenge to the adequacy-of-counsel requirement of Rule 23, and, as such, must be addressed at the class-certification stage (all the more so in light of the fact that there is no binding authority in favor of Defendant's position). Third, any ruling on this issue would be based on the assumption that Plaintiff is going to seek to be appointed as class counsel, but that assumption is not warranted (but ever if it were, the issue would remain premature).

## Point II

## Plaintiff Has Stated a Cause of Action

Defendant first argues that Plaintiff alleges only that Defendant "sent" e-mails to Plaintiff and the other putative class members, rather than alleging that the e-mails were *actually received*. However, Plaintiff has alleged actual receipt.

The e-mails at issue contained a hyperlink, which is a string of text or a computer graphic that a user can click with the mouse pointer to open a webpage. The contents of the webpage that was produced by the clicking of the hyperlink in Defendant's e-mails revealed the misleading nature of the e-mails' subject line. Defendant, noting that CBPC Section 17529.5(a)(3) is violated when an

2

e-mail's subject line is misleading with respect to the e-mail's contents, argues that the webpage is not part of the contents of the e-mail for purposes of Section 17529.5(a)(3). However, case law and common sense are to the contrary, as the loophole that Defendant seeks to have this Court recognize is unwarranted.

Defendant, further focusing on the hyperlink, argues that, in order to state a claim under Section 17529.5(a)(3), a recipient of one of Defendant's e-mails would have to have opened the e-mail, clicked on the hyperlink, and read the webpage that then appeared. This argument misreads the statute, whose plain language makes it analogous to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), in that one need only receive an unlawfully sent communication in order to state a claim but need not read it.

Defendant also contends that a third party sent the e-mails (which, in fact, Plaintiff alleges) and that, therefore, Plaintiff has no claim, because, according to Defendant, only an actual sender may be held liable under CBPC Section 17529.5(a)(3). Defendant's argument conflicts with the language of Section 17529.5(a)(3) and also disregards the fact that Defendant would be liable under the rules of principal-agency law in any event.

Finally, Defendant contends that Plaintiff has failed to plead with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. First, Plaintiff has satisfied Rule 9(b) by detailing Defendant's misrepresentation, identify Defendant as the maker of the misrepresentation, stating where and when the misrepresentation was made, and explaining why the misrepresentation was false. However, as the case law shows, Plaintiff's claims are not subject to Rule 9(b). That is because a claim under CBPC Section 17529.5(a)(3) is not a claim for fraud, and because Plaintiff did not allege fraud in pleading that claim.

## ARGUMENT

## POINT I

## THIS COURT HAS SUBJECT-MATTER JURISDICTION

**A.    The Statutory-Damages Cap for Violations of Section 17529.5(a)(3) of
the California Business and Professions Code Limits the Recovery
of a Given Person or Entity, not the Total Liability of a Defendant**

Defendant contends that Plaintiff alleges only one "incident," and that, therefore, the amount in controversy is one million dollars rather than the five million dollars required for diversity jurisdiction under 28 U.S.C. Section 1332(d), which is part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, Feb. 18, 2005, 119 Stat. 4 ("CAFA"), such that this Court lacks subject-matter jurisdiction. *See* Def. Mem. at 7-8. Defendant, which acknowledges that this action had been stayed "pending a decision by the Second Circuit Court of Appeals on another action brought by Bank against a different party under CBPC § 17529.5," Def. Mem. at 2, does not note that: (a) the issue before the Second Circuit was identical to that which Defendant raises here, and (b) the dismissal by the District Court in that case, whose reasoning is precisely that which Defendant employs, was reversed by the Second Circuit. *See Bank v. Hydra Group LLC*, 2010 U.S. Dist. LEXIS 100436 (E.D.N.Y. Sept. 24, 2010), *rev'd*, 433 Fed. Appx. 50 (2nd Cir. 2011) (Summary Order).[1] The only difference between *Bank* and the instant case is an immaterial one: in the former case, Plaintiff alleged that he received *three* e-mails, *see Bank*, 2010 U.S. Dist. LEXIS 100436 at *1, *3-*4, whereas, in the instant case, he alleges that he received *one* e-mail. *See* Sec. Am. Compl. (Doc. 13),

---

[1]

Lest there by any question, Plaintiff is not suggesting that Defendant's failure to acknowledge the Second Circuit's ruling, which was non-precedential under Rule 32.1.1(a) of the Local Rules of the United States Court of Appeals for the Second Circuit, was unethical. *See* N.Y. Rules of Professional Conduct, Rule 3.3(a)(2) ("[a] lawyer shall not knowingly [] fail to disclose . . . *controlling legal authority* known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel" (emphasis added)).

¶ 8. Under Defendant's argument, the receipt of three e-mails versus the receipt of one e-mail would lead to the same result because the receipt of three e-mails would, at most, produce an amount in controversy of three million dollars and would therefore likewise fall short of the five-million dollar requirement of CAFA.[2]

Two statutory provisions underlay Defendant's argument that a defendant's maximum liability is $1 million per "incident" without regard to the number of recipients. The first provision defines "'[i]ncident' [as] a single transmission or delivery to a single recipient or to multiple recipients of an unsolicited commercial e-mail advertisement containing substantially similar content." Cal. Bus. & Prof. Code ("CBPC") § 17529.1(j). The second provision states that "[a] person or entity bringing an action . . . may recover . . . [l]iquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident." CBPC § 17529.5(b)(1)(B)(ii).

Defendant misreads CBPC Section 17529.5(b)(1)(B)(ii). The plain meaning of the clause at issue, *i.e.*, "[a] person or entity bringing an action," is simply "a plaintiff." Thus, a particular plaintiff would be limited to recovering a total of $1,000,000 regardless of how many e-mails he received as part of an "incident."

Defendant, contrary to the plain language of Section 17529.5(b)(1)(B)(ii) and in disregard of the Second Circuit's reversal in *Bank v. Hydra*, seeks to have the per-recipient limitation converted into a limitation on a defendant's *total* liability with respect to an "incident." Under

---

2

On appeal in *Bank*, Plaintiff also argued that he had not limited the class to those recipients of e-mails that were sent as part of the same three "incidents" that included the e-mails he had received, but that, instead, he had defined the class based on the content of the defendant's e-mails without regard to whether the e-mails were received as part of the same "incidents" as the e-mails that were received by the plaintiff. *See Bank v. Hydra Group LLC*, (2d Cir. No. 10-4085-cv), App. Br. at 11 (Doc. 26). That argument is equally applicable in the present case. *See* Sec. Am. Compl. (Doc. 13), ¶ 25.

Defendant's proposed conversion of the statute, the recovery by one plaintiff of the maximum, *i.e.*, $1,000,000, for e-mails that were part of an "incident" would preclude a *second* plaintiff, whether as part of the same action or in a separate action, from recovering for the e-mails that the second plaintiff received as part of that "incident." That, however, is simply not what the statute states.[3]

**B.     Plaintiff May Act *Pro Se* During the Pre–Class-Certification Stage of this Action**

    **(i)     Another Judge of the Eastern District of New York Recently Recognized that a *Pro Se* Litigant May Pursue a Putative Class Action During the Pre–Class-Certification Stage**

As Defendant notes, the court in *Jaffe v. Capital One Bank*, 2010 U.S. Dist. LEXIS 18117 (S.D.N.Y. Mar. 1, 2010), ruled that an attorney could not serve as both class representative and class counsel. In so ruling, the court found that an attorney's interest in class-counsel fees would prevent him from fulfilling the obligation of a named plaintiff to place the interests of his fellow class members above the interest that class counsel has in obtaining legal fees. *See id.* at *30 ("a pro se plaintiff's 'duty to represent class interests would impermissibly conflict with [his] chance to gain financially from an award of attorneys' fees,'" quoting *Matassarin v. Lynch*, 174 F.3d 549, 559 (5th Cir. 1999)). However, for the reasons set forth in Point I(C) and (D), *infra*, the issue of whether an attorney who is the named plaintiff in a putative class action may proceed *pro se* during the pre–class-certification stage is premature, as Judge Gleeson recognized in *Bank v. Caribbean Cruise Line, Inc.* (E.D.N.Y. No. 1:11-cv-02744-JG-ALC) ("*Bank v. CCL*"), which involved the same plaintiff as does the present case.

During the pendency of a pre–class-certification dismissal motion in *Bank v. CCL*, which was

---

[3]    A business's employees could quite easily receive more than 1,000 e-mails as part of a single "incident," as a result of which the business, or its individual owner(s), would be limited to recovering one million dollars. In addition, although it is generally unlikely that an individual outside of a business context would receive more than 1,000 e-mails as part of a single "incident," it is by no means impossible.

based in part on the same issue on which Defendant's motion is based (*see Bank v. CCL*, Doc. 13-1,

at 12-14), Judge Gleeson issued an order that stated, in relevant part:

> because it is well-settled law that "[a] *pro se* plaintiff may not bring
> an action in which he will serve as both class representative and class
> counsel," *Jaffe v. Capital One Bank*, 2010 WL 691639, at *10
> (S.D.N.Y. [Mar. 1], 2010), the complaint in its current posture cannot
> support a class action. Therefore, the plaintiff shall address in his
> letter brief why I should not dismiss the complaint for lack of subject
> matter jurisdiction, given that he alleges only $1000.00 in [individual]
> damages and cannot meet the $75,000.00 amount-in-controversy
> requirement for diversity jurisdiction [under] 28 U.S.C. § 1332. . . .
> Oral argument remains scheduled for Friday, September 9, 2011[.]

*Bank v. CCL*, Order dated September 2, 2011, at 1-2 (a copy of this Order is annexed to the

Declaration of Todd C. Bank ("Bank Declaration") as Exhibit "A"). The parties thereafter submitted

the required letter briefs (a copy of the letter briefs, each dated September 7, 2011, is annexed to the

Bank Declaration as Exhibit "B"), and Judge Gleeson, following oral argument on September 9,

2011, denied the dismissal motion, which Judge Gleeson would have been required to grant if he had

found that Plaintiff could not pursue the action during that stage, because in that event the court

would then have lacked subject-matter jurisdiction as the Order of September 2, 2011 noted (a copy

of the Order dated September 12, 2011 is annexed to the Bank Declaration as Exhibit "C").

**(ii)    During the Current Stage of this Action, Plaintiff is Representing Only
Himself, as is His Right Under Both Statute and the Constitution**

Defendant's argument that Plaintiff may not represent the other class members is premature

during the current stage of this putative class action, that is, the pre–class-certification stage, because

the only parties during this stage are the *named* parties, *not* the *unnamed putative class members*.

Therefore, Plaintiff is currently representing only himself. *See Morlan v. Universal Guar. Life Ins.*

*Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("until certification there is *no class action* but merely the

*prospect* of one; the *only* action is the suit by the *named plaintiffs*") (emphases added); *see also*

*Gibson v. Chrysler Corp.*, 261 F.3d 927, 937 (9th Cir. 2001) ("[a]lthough [a class-]action [complaint] is often *referred to* as a class action when it is filed, it is, at the time of filing, only a *would-be class action*. It does not become a class action *until certified*") (emphases added)); *id.* at 940 ("a class action, when filed, includes *only* the claims of the *named* plaintiff[(s)]. The claims of *unnamed* class members are added to the action *later*, when the action is *certified* as a class under *Rule 23*" (emphases added)).

Plaintiff's right to represent himself, which is the only representation-related right he has invoked so far in this action, is protected by statute, *see* 28 U.S.C. § 1654, as well as by the Constitution. *See Iannaccone v. Law*, 142 F.3d 553, 556-558 (2d Cir. 1998); *Blair v. Maynard*, 324 S.E.2d 391, 394 (W. Va. 1984), and cases cited therein; *Cersosimo v. Cersosimo*, 449 A.2d 1026, 1031 (Conn. 1982).

### (iii) Because the Issue of Adequacy of Counsel is a Class-Certification Issue, It Must be Addressed at the Class-Certification Stage

Defendant's motion is based on the adequacy-of-counsel requirement of Rule 23. That requirement is part of the class-certification prerequisite that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). *See Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010) (noting, with respect to the determination of whether the adequacy-of-representation requirement is satisfied, that "[t]his inquiry, in part, considers the competency of class counsel and the existence of conflicts that might impair its representation").

Defendant's motion overlooks a crucial element concerning class actions: during the pre–class-certification stage of a putative class action, it is generally premature to rule on the issue of whether the Rule 23 class-certification prerequisites are satisfied. *See Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 WL 1168421 at *5 (N.D. Cal. May 16, 2005); *Ewing v. Coca Cola Bottling Co. of New York, Inc.*, 2001 WL 767070 at *8-*9 (S.D.N.Y. June 25, 2001).

A dismissal of a putative class action during the pre–class-certification stage on the grounds that the adequacy-of-counsel requirement precludes a *pro se* plaintiff from serving as both class representative and class counsel (whether or not he is an attorney, as discussed in Point I(D), *infra*) would necessarily mean that a *pro se* plaintiff must meet Rule 23(a)(4)'s adequacy-of-counsel requirement during the pre–class-certification stage. Such a requirement, however, would plainly contradict Rule 23, whose requirements, as set forth above, must be met *not* in order to *commence* a "class action," but, rather, in order to have it *certified*. The requirement that "a court *that certifies* a class must *appoint class counsel*," Fed. R. Civ. P. 23(g)(1) (emphases added), further reflects the fact that a pre-certification ruling in this action would be premature.

(iv)    **A Ruling Based on the Adequacy-of-Counsel Requirement Prior to the Class-Certification Stage Would Not Only be Based Solely on the Unsupported Assumption that Plaintiff Will Seek to be Appointed as Class Counsel and Therefore be Premature, But Would Be Premature Even if Such Assumption Were Warranted**

In *Jaffe*, *supra*, in which the court dismissed the plaintiff's class allegations in response to a pre–class-certification motion, the plaintiff had indicated during the pre–class-certification stage that he intended to ultimately seek to serve as class counsel. *See Jaffe*, 2010 U.S. Dist. LEXIS 18117 at *29 ("[a] *pro se* plaintiff may not bring an action in which he *will* serve as both class representative and class counsel" (emphasis added)); *see also id.* at *30 ("[the plaintiff] argues that he should not be prevented from asserting class allegations and *representing the proposed class*") (emphasis added)).

Unlike in *Jaffe*, Plaintiff has not indicated that he intends to seek appointment as class counsel (just as he had not made any such indication in *Bank v. CCL*, *supra*). That fact alone renders Defendant's motion premature. *See*, *e.g.*, *Steinberg v. Nationwide Mutual Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) ("[t]he plaintiff, an attorney and a sole practitioner, initiated this case as a *pro*

*se* litigant and now, after retaining counsel, [seeks to] act[] as class representative. . . . Because the plaintiff is *no longer seeking to serve as class counsel*, there is *no longer any argument* that his prior role as *pro se* litigant conflicts with his *future role as class representative*") (emphases added)). In addition, Plaintiff could himself move for class certification and, pursuant to Rule 23(g)(1), seek the appointment of another attorney as class counsel (who would, presumably, submit evidentiary material in support of that motion).[4]

## POINT II

## PLAINTIFF HAS STATED A CAUSE OF ACTION

**A.    Under Section 17529.5(a)(3) of the California Business and Professions Code, a Hyperlink in an E-Mail Is Part of the E-Mail**

Defendant contends that, "[w]hile Plaintiff's Second Amended Complaint makes reference to a hyper-link, and an AHS web-page, the AHS web-page cannot be deemed as a part of the 'content' of the e-mail, as a matter of law." Def. Mem. at 11.[5] However, the case law is to the contrary. In *Hypertouch, Inc. v. Valueclick, Inc.*, 192 Cal.App.4th 805 (Calif. App. 2011), the plaintiff alleged, just as does Plaintiff here, that third parties, acting on behalf of the defendant, had

---

[4]

Likewise, a plaintiff may retain one attorney to represent him during the pre–class-certification stage and then seek to have another attorney be appointed as class counsel. Indeed, a named plaintiff could even represent himself *after* the class has been certified while class counsel represents the absent class members, for a civil litigant has both a statutory and Constitutional right to represent himself. *See* Point I(B)(ii), *supra*.

Not only would it be improper to make a ruling based on the adequacy-of-counsel requirement prior to the class-certification stage, given that such ruling would be based solely on the unsupported assumption that Plaintiff will seek to be appointed as class counsel, it would improper even if Plaintiff had indicated such an intent, for the adequacy-of-counsel requirement is a class-certification requirement and, therefore, given the absence of binding authority precluding an attorney from acting as class representative and class counsel, would have to be addressed upon a motion for class certification, *see* Point I(B)(iii), *supra* (which is why *Jaffe* was ultimately decided incorrectly).

[5]

"A hyperlink is a string of text or a computer graphic that a user can click with the mouse pointer to open a new browser page." *Ilor, LLC v. Google, Inc.*, 631 F.3d 1372, 1374 (Fed. Cir. 2011) (citation and quotation marks omitted). This Court may take judicial notice of the fact that the terms "hyperlink" and "link" are used interchangeably.

"sen[t] out commercial e-mail advertisements that include[d] a *link* redirecting the consumer to . . . [the defendant's] [w]eb sites," *id.* at 814 (emphasis added), and that the subject line of the e-mails was misleading with respect to the material that appeared on those websites (or webpages). *See id.* at 837.[6] By proceeding to deny the defendant's summary-judgment motion, the court recognized that, under CBPC Section 17529.5(a)(3), a webpage that is linked in an e-mail is part of the contents of the e-mail:

> If a *subject line* creates the impression that the content of the e-mail will allow the recipient to obtain a free gift by doing one act . . ., and the *content of the e-mail* reveals that the 'gift' can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the *subject line* is *misleading* about the *contents* of the e-mail.

*Id.* at 838 (emphases added).

## B.   Plaintiff Has Alleged that the E-Mails at Issue Were Received by Him and the Other Putative Class Members

Defendant suggests that Plaintiff did not allege that he and the other class members "actually got the email." Def. Mem. at 11. On the contrary, Plaintiff alleges that the e-mails were sent, thus necessarily implying receipt. *See* Sec. Am. Compl. (Doc. 13), ¶¶ 8, 12, 17, 18. In any event, it is not necessary to determine whether such implication is warranted, because Plaintiff also explicitly alleges receipt of the e-mails. First, Plaintiff alleges that he "received" Defendant's e-mail, *see id.*, ¶¶ 11, 13, 14, 15, 16. Second, Plaintiff alleges, with respect to the other class members, that there were "[a]t least ten thousand e-mail addresses . . . [that] belonged to individuals or entities that, prior to their *receipt* of the e-mails," had not provided consent to receive the e-mails. *Id.*, ¶ 18 (emphasis added).

---

6

Technically, it is more accurate to say that a link is to a web*page* rather than a web*site*. "Website" is a broader term than "webpage." A website consists of a home page and, typically, additional pages, and a link would be to a specific webpage, whether a home page or any other webpage of a website.

**C.      Whether a Recipient of an E-Mail Has a Cause of Action Under
Section 17529.5(a)(3) of the California Business and Professions
Code Does Not Depend on Whether He Was Actually Misled by it**

Defendant contends that in order to have a claim under CBPC Section 17529.5(a)(3), one

must have opened the e-mail, clicked on its hyperlink, and been directed to Defendant's webpage

(a copy of which is annexed as Exhibit "B" to the Second Amended Complaint). *See* Def. Mem. at

11. Defendant misinterprets the statute in two respects. First, Section 17529.5(a)(3) makes it

"unlawful . . . to advertise in a commercial e-mail advertisement [if] . . . [t]he e-mail . . . has a

subject line that a person *knows would be likely to mislead* a recipient, acting reasonably under the

circumstances, about a material fact regarding the contents or subject matter of the message." Thus,

under the plain language of this provision, a recipient need not *actually be misled* in order for there

to have been a violation, whose existence does not depend on the conduct of the recipient. On the

contrary, Section 17529.5(a)(3) imposes "strict liability." *Hypertouch v. Valueclick*, *supra*, 192

Cal.App.4th at 829. In this regard, Section 17529.5(a)(3) is akin to the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), which imposes strict liability on debt collectors, such that

the actionability of a debt-collection letter, for example, does not depend upon whether the recipient

is actually misled or even upon whether the recipient opens the letter. *See Bartlett v. Heibl*, 128 F.

3d 497 (7th Cir. 1997), whose reasoning applies equally to Section 17529.5(a)(3) and Plaintiff's

claims thereunder, which seek only statutory damages (pursuant to Section 17529.5(b)(1)(B)(ii)) and

not actual damages (as authorized by Section 17529.5(b)(1)(B)(i)):

> The defendant . . .contends that even if [its] letter is confusing this is
> of no moment because [the plaintiff] *didn't read it*. That would be a
> telling point if [the plaintiff] were seeking *actual damages* . . . . He
> can't have suffered such damages as a result of the statutory violation,
> because he *didn't read the letter*. But he is *not seeking actual
> damages*. He is seeking *only statutory damages*, a penalty that *does
> not depend on proof that the recipient of the letter was misled*. All
> that is required is proof that the *statute was violated* . . . .

> If reading were an element of the violation, then [the plaintiff] would have to prove that he read the letter. But it is not. . . . *Sending or receiving a letter doesn't imply that the letter is read; there is no contradiction in saying, "I received your letter but I never read it."*

*Id.* at 499 (emphases added) (citations omitted). *See also Morgan v. Credit Adjustment Bd., Inc.*, 999 F.Supp. 803, 805 (E.D. Va. 1998) ["the debt collector's] argument that [the plaintiff] *never read* the [debt collector's] letter is of no moment on the issue of whether a violation has occurred" (citation and quotation marks omitted)). The California statute further makes it clear that the question of whether an e-mail violates CBPC Section 17529.5(a)(3) is independent of whether a given plaintiff has read the e-mail, as standing to assert the private right of action for violations of Section 17529.5(a)(3) is based solely upon one criterion, which is receipt of such an e-mail, just as is the case under the FDCPA with respect to a violative letter: CBPC Section 17529.5(b)(1)(A)(iii) provides that, "[i]n addition to any other remedies provided by any other provision of law, the following may bring an action against a person or entity that violates any provision of this section: . . . [a] *recipient* of an unsolicited commercial e-mail advertisement" (emphasis added).

**D.      The Liability of an Advertiser Under Section 17529.5(a)(3) of the California Business and Professions Code Does not Depend on Whether the Advertiser Was the Actual Sender of an E-Mail that Violated that Provision**

Defendant, after stating that "Plaintiff alleges that AHS 'sent' the offending [e-mail] to Plaintiff from California," Def. Mem. at 10, contends that this could not be true, because "Plaintiff fails to allege how an entity that resides in Delaware, and Tennessee, like AHS, could have sent the e-mail at issue from California," Def. Mem. at 10, and because the e-mail itself states, "in multiple places . . . , [that it] was sent by an entity known as Eclipsemediaonline; an entity that is not a party to this litigation." *Id.* Each of Defendant's arguments rest upon a glaring omission: contrary to Defendant's description of Plaintiff's allegation, the Second Amendment Complaint does not allege that Defendant itself sent the e-mails; rather, it alleges that "AHS, *through a third party*, sent, from

California, an electronic-mail message [] to Bank." Sec. Am. Compl. (Doc. 13), ¶ 8.

Defendant contends that "[i]f a party did not actually 'send' the offending e-mail, that party cannot be liable under CBPC §17529.5." Def. Mem. at 4, citing *Asis Internet Services v. Optin Global, Inc.*, 2008 WL 1902217 at *18 (N.D. Cal. Apr. 29, 2008). However, *Asis v. Optin* did not even suggest that one is not liable under Section 17529.5(a)(3) if a third party send e-mails on its behalf. In any event, the plain language of Section 17529.5(a)(3) makes it clear that an advertiser is liable for e-mails sent on its behalf, for Section 17529.5(a)(3) states: "[i]t is unlawful for any person or entity to *advertise* in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances." By this plain language, there is no requirement that the advertiser be the actual sender of the e-mail. Here, Plaintiff has alleged that Defendant advertised in an e-mail, and that the e-mail was sent from California. That is all that Section 17529.5(a)(3) requires. *See Asis Internet Services v. Vistaprint USA, Inc.*, 617 F.Supp.2d 989, 991 (N.D. Calif. 2009) (noting that the fact that e-mails were sent on behalf of the defendant, an advertiser, was "concede[d]" by the defendant, which sought dismissal on two unrelated grounds).

Furthermore, if the sender here (Eclipsemediaonline, according to Defendant, *see* Def. Mem. at 10) were liable, Defendant would also be liable because California follows the common-law rule of principal-agent liability. *See Myers v. Trendwest Resorts, Inc.*, 56 Cal.Rptr.3d 501 (Calif. App. 2007) ("[u]nder common law agency principles, a principal is liable for the torts of his agent if the agent was aided in accomplishing the tort by the existence of the agency relationship." *Id.* at 524-525, citing Rest.2d Agency, § 219(2)(d), and Rest.3d Agency, §§ 7.03, 7.08 (additional citation and quotation marks omitted)); *see also id.* at 525, n.12 ("section 7.03 . . . says the principal is (1) directly liable when the agent acts with actual authority, but (2) vicariously liable when the agent acts

with apparent authority . . . . Section 7.08 . . . says: '[a] principal is subject to vicarious liability for

a tort committed by an agent in dealing or communicating with a third party on or purportedly on

behalf of the principal when actions taken by the agent with apparent authority constitute the tort .

. . .'").[7]

Finally, Defendant's contention that Plaintiff, by not alleging that Defendant was the actual

sender of the e-mails, "has failed to meet the heightened pleading requirements necessary for a

plausible claim under CBPC §17529.5," Def. Mem. at 10, is based on a false premise, although the

issue of whether the heightened pleading standards of Rule 9(b) are applicable here is addressed in

Point II(E)(ii), *infra*.

### E.     Although Plaintiff Has Satisfied the Heightened Pleading Standards of Rule 9(b), He Was Not Required to Do So of the Federal Rules of Civil Procedure, He Was Not Required To Do So

Defendant contends that, "[t]o sustain a claim under CBPC §17529.5, a plaintiff must plead

deception or the misleading aspects of the e-mail at issue with particularity [under Rule 9(b) of the

Federal Rules of Civil Procedure]." Def. Mem. at 4. Although Plaintiff explains in Point II(E)(ii),

*infra*, why Rule 9(b) does not apply here, the Second Amended Complaint satisfies that rule in any

event, as set forth in Point IV(A), *infra*.

#### (i)     Plaintiff Has Satisfied the Heightened Pleading Standards of Rule 9(b) of the Federal Rules of Civil Procedure

Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff

contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or

---

[7]     As explained in *Morgan v. Galilean Health Enterprises, Inc.*, 977 P.2d 357 (Okla. 1998), "a 'statutory tort[]' [is] a legislatively-crafted, non-contractual duty, unknown to the common law, for the breach of which an action [] will lie," *id.* at 361; *see also Betor v. Quantalytics, Inc.*, 2003 WL 22407121 at *1 (Ohio Comm. Pls. Oct. 3, 2003) ("[e]ach unsolicited fax advertisement is an independently actionable tort" under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which prohibits unsolicited fax advertisements and awards statutory damages for violations. *See* 47 U.S.C. §§ 227(b)(1)(C), (b)(3).

omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund v. Morgan Guar. Trust*, 375 F.3d 168, 187 (2d Cir. 2004) (citation and quotation marks omitted). Plaintiff has detailed the statement that was false, that is, "the subject line [of Defendant's e-mail, which was]: 'Roof Repair Made Easy,'" Sec. Am. Compl. (Doc. 13), ¶ 9, and explained why it was false by alleging that "the subject line . . . promoted a roof-repair service, when, in fact, the body of the e-mails contained hyperlinks to a web page that did not refer to, or offer, any roof-repair services but instead promoted home-warranty insurance policies." *Id.*, ¶ 19. In addition, Plaintiff, as noted in paragraph 19, annexed a copy of that webpage to the Second Amended Complaint. *See* Sec. Am. Compl. (Doc. 13), Exh. "B." Thus, Plaintiff has satisfied the second and third standards of Rule 9(b). In addition, Plaintiff has "identif[ied] the speaker" and alleged "where and when the statements . . . were made," *see* Sec. Am. Compl. (Doc. 13), ¶ 8, thereby satisfying the second and third standards of Rule 9(b).

### (ii)   Rule 9(b) of the Federal Rules of Civil Procedure Does Not Apply to this Action[8]

Other than the fact that CBPC Section 17529.5(a)(3) applies only to e-mail, the elements of a claim under Section 17529.5(a)(3) are the same as the elements of a claim under Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. §§ 41-58 (15 U.S.C. § 45(a)(1)), which prohibits "[u]nfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). *See FTC v. Verity Int'l., Ltd.,* 443 F.3d 48 (2d Cir. 2006):

> To prove a deceptive act or practice under § 5(a)(1), the FTC must show three elements: [1] a representation, omission, or practice, that

---

[8]

Federal law determines whether Rule 9(b) applies to a state-law claim. *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 n.6 (2d Cir. 1991) (discussing, with respect to state-law fraud claims, that "the Federal Rules of Civil Procedure govern the degree of particularity with which . . . allegation[s] [of violations of state law] must be made in a federal complaint."); *accord*, *Northwestern Mut. Life Ins. Co. v. Banc of America Securities LLC*, 254 F.Supp.2d 390, 400 (S.D.N.Y. 2004).

[2] is *likely to mislead* consumers *acting reasonably* under the circumstances, and [3], the representation, omission, or practice is *material*. The deception *need not be made with intent to deceive*; it is *enough* that the representations or practices were *likely to mislead consumers acting reasonably*.

*Id.* at 63 (emphases added) (citations and quotation marks omitted).

Claims under Section 5(a)(1) are not subject to Rule 9(b) pleading, for reasons that are equally applicable to claims under Section 17529.5(a)(3). *See FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1204, n.7 (10th Cir. 2005) ("[a] § 5 claim simply is *not a claim of fraud* as that term is commonly understood or as contemplated by Rule 9(b) . . . . Unlike the elements of common law fraud, the FTC *need not prove scienter, reliance, or injury* to establish a § 5 violation" (emphases added)); *see also FTC v. Medical Billers Network, Inc.*, 543 F.Supp.2d 283, 314 (S.D.N.Y. 2008) (citing *FTC v. Communidyne, Inc.*, 1993 WL 558754 at *2 (N.D. Ill. Dec. 3, 1993), for "holding that a claim under Section 5(a) is *not a claim of fraud or mistake subject to Rule 9(b)* because has *no scienter or reliance requirement*" (emphases added), and citing *FTC v. Nat'l Testing Servs., LLC*, 2005 WL 2000634 at *2 (M.D. Term. Aug. 18, 2005), for "holding that Rule 9(b) does not apply to Section 5(a) claims because *neither intent to deceive, proof of consumer reliance, nor proof of consumer injury are necessary elements*" (emphasis added)); *Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130 (S.D.N.Y. 1997), which concerned false-advertising claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*:

The making of a false statement is not *per se* one of those "Special Matters" that Rule 9 requires be specially pleaded. Rather, the particularity requirement of Rule 9(b) is limited to averments of "fraud or mistake." . . . *[N]othing in the language or history of Rule 9(b) suggests that it is intended to apply, willy-nilly, to every statutory tort that includes an element of false statement.* . . .

No matter how parsed, a claim of false advertising under the Lanham Act--one of a panoply of trademark torts created by the [Lanham] Act--is *not identical to a claim of fraud.* Fraud requires, *not*

> *just the making of a statement known to be false*, but also, *inter alia*, a *specific intent to harm* the victim and *defraud* him of his money or property.

*Id.* at 131 (emphases added); *Advanstar Communs., Inc. v. Dirt Motosports, Inc.*, 2006 U.S. Dist. LEXIS 68720 at *13 (N.D.N.Y. Sept. 26, 2006) ("while it is arguable that a specific false[-] advertising claim which includes *all elements of a fraud claim* would be subject to Rule 9(b)'s particularity requirement, there is no basis to require particularity of pleading in every claim of false advertising," citing *Villano*, 176 F.R.D. at 131 (emphasis added) (additional citation omitted)).

In *Gordon v. Virtumundo, Inc.*, 2006 U.S. Dist. LEXIS 89494 (W.D. Wash. Dec. 8, 2006), *summary judgment granted*, 2007 U.S. Dist. LEXIS 35544 (W.D. Wash. May 15, 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009), the court held that Rule 9(b) does not apply to claims under Washington State's e-mail–advertising statute for reasons that are equally applicable to CBPC Section 17529.5(a)(3). In *Gordon*, the plaintiffs brought claims under several provisions of the federal CAN-SPAM ("Controlling the Assault of Non-Solicited Pornography and Marketing") Act, 15 U.S.C. §§ 7701-7713, including claims for "materially misleading subject lines" under Section 7704(a)(2) of the CAN-SPAM Act, *see id.* at *7, which is virtually identical to CBPC Section 17529.5(a)(3).[9] In addition, the plaintiffs in *Gordon* brought claims under Washington State's e-mail–advertising statute (Washington Commercial Electronic Mail Act, Wash. Rev. Code §§ 19.190.010-.110 ("CEMA")) for "e-mails [that] contained false or misleading subject lines." *Gordon*, 2006 U.S. Dist. LEXIS 89494 at *8. The court held that heightened pleading under Federal Rule 9(b) does not apply

---

[9]

The CAN-SPAM provision prohibits the sending of "a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message *would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message* (consistent with the criteria used in enforcement of section 5 of the Federal Trade Commission Act (15 U.S.C. 45))," 15 U.S.C. § 7704(a)(2) (emphasis added). The emphasized language is *verbatim* of CBPC Section 17529.5(a)(3).

to claims for misleading subject lines under both the CAN-SPAM Act and under CEMA. Regarding

the CAN-SPAM Act, the court explained:

> In their claims under the CAN-SPAM Act, Plaintiffs allege that Defendants initiated the transmission of commercial e-mail messages to e-mail addresses served by Plaintiffs' domain name and servers which . . . *contained materially misleading subject lines . . . . [T]*his claim[] identifies an act prohibited by CAN-SPAM. *See* 15 U.S.C. § 7704. Only [this] claim[] incorporates any of the elements of fraud. A "materially misleading" e-mail subject line could be considered a false representation of a material fact. *Plaintiffs, however, do not allege that Defendants knew the subject lines were misleading, that they intended the e-mails to be deceptive, or that Plaintiffs took any action in reliance on Defendants' alleged misrepresentations.* Therefore, under *Vess* [*v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003)], *none of Plaintiffs' CAN-SPAM claims constitute averments of fraud and Plaintiffs are not required to plead them with particularity*.

*Id.* at *7-*8 (emphases added) (citation to complaint omitted). Here, Plaintiff has alleged that "AHS

*knew* that the subject line of the e-mails would likely be misleading to Bank and the other recipients

of the same E-mails," Sec. Am. Compl. (Doc. 13), ¶ 19 (emphasis added), but did not allege either

intent or reliance, and therefore did not plead fraud. Indeed, *Gordon*, in addressing CEMA,

recognized that Rule 9(b) applies only where intent is pleaded: "Plaintiffs claim that e-mails sent by

Defendants violated CEMA because the e-mails . . . contained *false or misleading subject lines. Like

Plaintiffs' CAN-SPAM claims, these allegations do not necessarily allege an intent to defraud, and

therefore they are not subject to the requirements of Rule 9(b).*" *Id.* at *8-*9 (emphases added)

(ellipses in original) (citations omitted).

Like Section 7704(a)(2) of the CAN-SPAM Act, and like CEMA, a violation of CBPC

Section 17529.5(a)(3) does not require that an e-mail sender have an intent to mislead the recipient,

does not require reliance by the recipient, and does not require actual damages. Therefore, an

allegation of a violation of CBPC Section 17529.5(a)(3) is not an allegation of fraud and is not

subject to Rule 9(b).

Defendant, in support of its argument that Plaintiff's claims are subject to Rule 9(b), cites *Asis Internet Services v. Subscriberbase, Inc.*, 2009 U.S. Dist. LEXIS 112852 (N.D. Cal. Dec. 4, 2009). *See* Def. Mem. at 4-5. *Subscriberbase* found that, "[a]lthough [CBPC] section 17529.5[(a)(3)] only requires [p]laintiffs to plead knowledge of a likelihood of misleading a reasonable person, thereby eliminating the elements of reliance and damages that would be present in a common law fraud claim, the Court finds that the absence of these elements is not enough to eliminate the need for [pleading with] specificity [under Rule 9(b)]." *Subscriberbase*, 2009 U.S. Dist. LEXIS 112852 at *10. However, the court's reasoning cannot be reconciled with the numerous cases upon which Plaintiff relies.

Defendant also cites *Hypertouch, Inc. v. Azoogle.com, Inc.*, 386 Fed. Appx. 701 (9th Cir. July 9, 2010). *See* Def. Mem. at 5. However, in *Hypertouch*, the court found that heightened pleading, to at least some extent, governed the plaintiff's CBPC Section 17529.5(a)(3) claim because, unlike in the present case, the plaintiff in *Hypertouch* alleged *fraud*:

> We agree with the district court that *the causes of action as pled sound in fraud*. Not only does the California statute speak in terms of commercial e-mail advertisements that contain "falsified," "misrepresented," "forged," or misleading information, *see* Cal. Bus. & Prof. Code § 17529.5(a)(2)-(3), terms common to fraud allegations, but *Hypertouch's own complaint repeatedly describes the advertisements and their content as "fraudulent."* It cannot circumvent the requirements of the Federal Rules of Civil Procedure by arguing that it did not plead all of the allegations sufficiently to set forth a claim of fraud. We express no opinion as to the degree of particularity required for a statutory claim of this nature, but the allegations of this complaint were pled with no degree of particularity.

*Hypertouch*, 386 Fed. Appx at 702 (emphasis added).

In sum, Plaintiff's claims under CBPC Section 17529.5(a)(3) do not allege fraud and are

therefore not subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety and grant Plaintiff any appropriate relief that is authorized by law.

Dated: May 4, 2012

　　s/ ***Todd C. Bank***　　　　　　
TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2012, a true and accurate copy of the foregoing has been served via first-class mail of the United States Postal Service on the following:

Harrington, Ocko & Monk LLP
81 Main Street, 2nd Floor
White Plains, NY 10601
Attn:   Kevin J. Harrington, Esq.
        John T.A. Rosenthal, Esq.

Attorneys for Defendant


   s/ **_Todd C. Bank_**   
TODD C. BANK