UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
x
TODD C. BANK, individually and on behalf of all
others similarly situated,

       Plaintiff,

    -against-

AMERICAN HOME SHIELD CORPORATION,

       Defendant.
------------------------------------------------------------------
x

**MEMORANDUM AND ORDER**
Case No. 10-CV-4014

*Appearances*:

*For Plaintiff*:
TODD C. BANK, ESQ.
119-40 Union Turnpike, Fourth Floor
Kew Gardens, New York 11415

*For Defendant:*
KEVIN J. HARRINGTON, ESQ.
JOHN T.A. ROSENTHAL, ESQ.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, New York 10601

**BLOCK, Senior District Judge:**

      Todd Bank, an attorney representing himself, alleges that American Home Shield Corporation ("AHS"), through a third party, sent a misleading email to him and "at least ten thousand [other] e-mail addresses."  Second Am. Compl. ¶ 17.  Because the email was allegedly sent from California, he invokes California Business & Professions Code § 17529.5, which imposes civil liability on those who "advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address," if, among other circumstances, "[t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances,

about a material fact regarding the contents or subject matter of the message." *Id.* § 17529.5(a)(3).

Bank sues both on his own behalf and on behalf of the class of recipients. Jurisdiction is premised on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

AMS moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It argues that Bank has not plausibly alleged (1) the jurisdictional prerequisite of $5 million in damages, (2) that the e-mails were sent by AMS, and (3) that the e-mails were misleading. In addition, AMS moves to strike the class-action allegations on the ground that Bank cannot simultaneously serve as class representative and class counsel. For the following reasons, both the motion to dismiss and the motion to strike are denied.

## I. MOTION TO DISMISS

### A. Jurisdiction

Bank alleges that "[t]he matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." Second Am. Compl. ¶ 4. This creates a rebuttable presumption that CAFA's amount-in-controversy threshold is satisfied. *See Wolde-Meskel v. Vocational Instruction Project Comm. Servs.*, 166 F.3d 59, 63 (2d Cir. 1999). The presumption is overcome only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

AHS argues that it is legally certain that $5,000,000 is not at issue because § 17529.5 caps recovery at "one million dollars ($1,000,000) per incident." Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii). It argues that the cap refers to a sender's maximum liability for

2

a single e-mail sent to multiple addresses.

No California court has adopted AMS's construction of the damages cap. In addition, the Second Circuit recently found that the "paucity of analysis by California courts" prevented it from saying "with a 'legal certainty'" that a class action based on the statute could not result in an award above $1 million. *Bank v. Hydra Group LLC*, 433 F. App'x 50, 51 (2d Cir. 2011). Although *Hydra Group* is only a summary order, and not binding precedent, there is no reason to think that the circuit court would reach a different conclusion in this case.

**B. Origin of the Email**

AHS argues that Bank cannot plausibly allege that it sent the offending email. It notes that it is a Tennessee-based corporation, whereas the email is alleged to have been sent from California. It further points out that the email itself purports to have been sent by "Eclipse Media Online," an entity based in Mountain View, California. *See* Second Am. Compl., Ex. A.

Liability under § 17529.5 is premised on *advertising,* not *sending*. "Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails." *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 19 (Ct. App. 2011). In any event, Bank alleges that AMS caused the email to be sent "through a third party." Second Am. Compl. ¶ 8. It is entirely plausible that AMS directed a California company—presumably Eclipse Media Online—to send the email. California adheres to the general rule of agency law that a principal is as liable for the acts he directs another to take as he would be had

3

he acted himself.  *See* 3 Witkin, Summary of Cal. Law (10th), Agency & Employment § 163.

**C.  Nature of the Email**

The subject line of the email at issue was "Roof Repair Made Easy."  Second Am. Compl., Ex. A.  The body of the email read as follows:

> Residential & Commercial Roofing
>
> Get matched to local contractors.  Receive price estimates on new roof installation, reroofing & repairs.  Protect Your Home Today!
>
> Roofers You Can Trust!

*Id.*  The email included two hyperlinks, one tagged "FIND A LOCAL ROOFER," the other "GET MORE INFO."  *Id.*  Clicking on either link took the recipient to a website containing an application for an AHS "home warranty," which was described as "a renewable service contract that covers the repair or replacement of many of the most frequently occurring breakdowns of system components and appliances."  *Id.*, Ex. B.

AHS argues that the subject line "Roof Repair Made Easy" was not misleading, within the meaning of § 17529.5, because the home warranty application was accessible only by clicking on a hyperlink to a separate website.  Because of this arrangement, it argues, the application was not part of the "contents or subject matter of the message."

The Court declines to endorse AHS's construction of the statute.  The statute requires consideration of the reaction of a "recipient, acting reasonably under the circumstances."  Cal. Bus. & Prof. Code § 17529.5(a)(3).  The subject line implied that the

4

email would provide information about roof repairs. Given the text and layout of the email, a reasonable recipient would conclude that the only way to obtain that information was by clicking on the hyperlinks. Since the clicks resulted in information about home warranties, the recipient might reasonably feel misled.[1]

## II. MOTION TO STRIKE CLASS ALLEGATIONS

Bank does not dispute that he cannot serve as both class representative and class counsel. *See* 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1769.1 (3d ed. 2005) ("[S]everal courts have ruled that the class attorney cannot be the named representative or even a member of the class."); 5 James William Moore et al., *Moore's Federal Practice* § 23.25 (3d ed. 2010) ("[A]n attorney may not bring a class action pro se because too close a relationship between the class representative and class counsel is a disqualifying conflict of interest."). He argues, however, that the prohibition is of no consequence unless and until he moves to be appointed both class representative and class counsel through a motion to certify the class. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 927 (9th Cir. 2001) ("A class action complaint is filed only by a named plaintiff or plaintiffs. Although such an action is often referred to as a class action when it is filed, it is, at the time of filing, only a would-be class action. It does not become a class action until certified

---

[1] AHS complains that Bank did not allege that any recipient other than himself actually clicked on the hyperlinks and was taken to the home warranty application. That is perhaps a factor to be considered in defining an appropriate class, but it does not preclude Bank from stating a claim for a violation of the statute. *See Hypertouch, Inc.*, 123 Cal. Rptr. 3d at 21 ("[S]ection 17529.5 differs from common law fraud in that it does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message.").

5

by the district court.").

AHS responds that Federal Rule of Civil Procedure 23(d)(1)(D) authorizes district courts to "require that the pleadings [in a class action] be amended to eliminate allegations about representation of absent persons." Strictly speaking, the purpose of the rule is to allow a district court to "clean up" the pleadings if class certification is denied:

> If the action fails to meet one of more of the . . . prerequisites, it may be dismissed under Rule 23(c)(1). The court may decide, however, to allow the litigation to go forward as an individual action by issuing an order under Rule 23(d)(4) [now Rule 23(d)(1)(D)] amending the complaint to strike the references to the class action and the representation of absent persons.

7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1759 (3d ed. 2005) (footnote omitted). It is true, however, that several "[c]ourts in this district have held that a motion to strike class allegations . . . may be addressed 'prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.'" *Jaffe v. Capital One Bank*, 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (quoting *In re Pub. Offering Sec. Litig.*, 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008)); *see also Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-16 (E.D.N.Y. 2010); *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008).

The rule that class counsel may not serve as the class representative derives from the requirement of Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interests of the class." *See Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010) ("This inquiry, in part, considers the competency of class counsel and the existence of conflicts that might impair its representation."). Thus, it is not independent

6

of the class certification inquiry and should not be applied prior to that stage of the litigation. As Bank points out, the issue will be moot if, at that stage, he seeks appointment of someone other than himself to serve as class counsel. *See Steinberg v. National Mut. Ins. Co.*, 224 F.R.D. 67, 75-76 (E.D.N.Y. 2004) ("Because the plaintiff is no longer seeking to serve as class counsel, there is no longer any argument that his prior role as pro se litigant conflicts with his future role as class representative.").[2]

### III. CONCLUSION

AHS's motion to dismiss and motion to strike class allegations are both denied.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 4, 2013

---

[2]The eventual denial of class certification does not generally deprive a court of jurisdiction under CAFA. *See Falcon v. Philips Elecs. N. Am. Corp.*, 489 F. Supp. 2d 367, 368 (S.D.N.Y. 2007) ("CAFA does not list class certification as a prerequisite to federal jurisdiction. Indeed, at the time a CAFA action is brought in federal court, class certification will almost always remain to be decided at some unspecified future date."). Bank is cautioned, however, that class certification is to be determined "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). If it appears that Bank is being dilatory in seeking certification, the Court may conclude that a viable class action was never possible. The result would be dismissal—including dismissal of Bank's individual claim—for lack of subject-matter jurisdiction under CAFA. *See Falcon*, 489 F. Supp. 2d at 368 ("To be sure, if class certification is subsequently denied on a basis that precludes even the reasonably foreseeable possibility of subsequent class certification in the future, the Court may lose jurisdiction at that point.").