UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

TODD C. BANK, *individually and on behalf of all others similarly situated*,

                            Plaintiff,

                                                                    **MEMORANDUM & ORDER**
          -against-                                                10-CV-4014 (PKC)

AMERICAN HOME SHIELD CORPORATION,

                            Defendant.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Pending before the Court is the request of Plaintiff Todd C. Bank for leave to serve a subpoena duces tecum upon "the former president and chief operating of an entity called Webjuice, LLC," despite the period for discovery having closed on October 31, 2013.  (Dkt. 44 at 1.)  For the reasons set forth below, Plaintiff's request is DENIED.

I.      BACKGROUND

On September 1, 2010, Plaintiff filed this class action lawsuit alleging violations of the California Anti-Spam statute.[1]  (Dkt. 1 at ¶¶ 2, 3, 18.)  The initial complaint alleged, *inter alia*, that on or about April 5, 2010, Defendant American Home Shield ("AHS") "sent, or caused to be sent, to Plaintiff, an 'unsolicited commercial electronic-mail advertisement[,]'" and that AHS sent the same advertisement "to at least 10,000 valid e-mail addresses."  (*Id*. at ¶¶ 8, 12.)  In the

---

[1] California Business & Professions Code § 17529.5 imposes civil liability on those who "advertise in a commercial email advertisement either sent from California or to a California electronic mail address if, *inter alia*, "[t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."  § 17529.5(a)(3).

1

"Class Allegations" section of the complaint, Plaintiff re-alleged that "[t]here are more than 10,000 individuals and entities whose claims are similar to Bank's claims" (*id.* at ¶ 23), and further asserted that:

> "A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the Class is so numerous that joinder of all Members of the Class is impracticable, and because the damages suffered by most of the individual Members of the Class are too small to render prosecution of the claims asserted herein economically feasible on an individual basis, the expense and burden of individual litigation makes it impractical for Members of the Class to adequately address the wrongs complained of herein."

(*Id.* at ¶ 25.) In addition, as required to establish jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleged that the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id*. at ¶ 4.[2]

On January 5, 2012, Plaintiff filed a Second Amended Complaint, which contained significantly more detailed factual allegations, including the following:

> "On or about April 5, 2010, AHS, through a third party, sent, from California, an electronic-mail message ("e-mail") to Bank[.]" (Dkt. 13 at ¶ 8.)

> "To at least ten thousand e-mail addresses during the period beginning one year prior to the commencement of this action and continuing to the present, AHS has sent, from California, e-mails that contained the same subject line that appeared in the e-mails that AHS sent to Bank (with the exception that the date in the subject line, in many cases, might have differed from either of the dates that appeared in the subject line of the e-mails that AHS sent to Bank) and the same body as did the e-mails that AHS sent to Bank." (*Id.* at ¶ 17.)

> "At least ten thousand e-mail addresses to which AHS sent the e-mails described in the preceding paragraph belonged to individuals or entities that, prior to their receipt of the e-mails that AHS sent to them, had not provided direct consent to AHS or any other individual or entity to receive the e-mails; had not made an inquiry regarding products or services offered by either AHS or any other individual or entity; had not provided their e-mail addresses to either AHS or any other individual or entity; and had not made an

---

[2] Because the California Anti-Spam statute only provides for liquidated damages in the amount of $1,000 per plaintiff, the complaint's allegations regarding 10,000 or more putative class members was essential to establishing jurisdiction under CAFA. *See* Cal. Bus. & Prof. Code § 17529.5(a)(3) (liquidated damages provision).

2

application, purchase, or transaction, with or without consideration, regarding products or services offered by either AHS or any other individual or entity." (*Id.* at ¶ 18.)

Notably, the amended complaint also identified the California-based sender of the e-mails as "EclipseMediaOnline." (*Id*. at ¶10, Exhibit A.)

On May 14, 2013, following AHS's failed motion to dismiss the complaint (Dkt. 26), the parties met with Magistrate Judge Ramon E. Reyes for a scheduling conference. The discovery schedule set at the conference provided for all discovery to be completed by November 1, 2013. AHS states that its attorneys specifically advised Plaintiff at the conference that Webjuice was involved in sending the e-mail at issue. (Dkt. 43 at 1.) Plaintiff disputes this assertion, claiming that he "first learned of the name Webjuice when AHS served its Rule 26 disclosures on July 18, 2013." (Dkt. 46 at 3.) In any event, on July 18, 2013, AHS served its Rule 26 initial disclosures on Plaintiff, which indicated, *inter alia*, that Webjuice had information relevant to this action and also provided Webjuice's Warren Street address in California. (Dkt. 43 at 1; Dkt. 46 at 3.) On August 29, 2013, during the deposition of Trafford Seymour, an AHS representative, Plaintiff asked questions about Webjuice, but the witness testified that he did not know if Webjuice had sent the AHS e-mails. (Dkt. 44, Exhibit F at. 23, 29, 46-47.)

Despite knowledge of their relevance, Plaintiff did not seek to subpoena records from Webjuice until October 29, 2013, two days before the close of discovery. (Dkt. 44 at 2; Dkt. 43 at 1.) At that time, Plaintiff attempted service of the Webjuice subpoena at an address listed with the California Secretary of State, which turned out to be incorrect. (Dkt. 44 at 2.) On November 22, 2013, three weeks after the close of discovery, Plaintiff attempted to re-serve the Webjuice subpoena, this time using the Warren Street address that AHS had provided in July 2013. (*Id.*) AHS moved to quash the subpoena as untimely, but Judge Reyes denied AHS's motion, finding that AHS was not prejudiced by Plaintiff's belated document subpoena. (Order dated 12/06/13;

3

Dkt. 40 (describing the subpoena as one for "information or documents").) Plaintiff apparently did not receive any response to the second Webjuice subpoena because, according to Plaintiff, Webjuice has not been in operation since at least January 21, 2014. (Dkt. 44 at 1.)

On January 8, 2014, the parties appeared before the Court for a pre-motion conference relating to AHS's proposed summary judgment motion. At the conference, the Court questioned Plaintiff about the basis for his the allegation in the Second Amended Complaint that AHS sent "[t]o at least ten thousand e-mail addresses during the period beginning one year prior to the commencement of this action and continuing to the present . . . e-mails that contained the same subject line as the e-mails AHS sent to Bank[.]" (Dkt. 13 at ¶ 17.) In substance, Plaintiff acknowledged that, at the time he filed the complaint, he did not have specific or direct information about the number or identity of the recipients of the e-mail, but that, based on his general research about e-mail advertising and marketing, he had a "good faith" basis for believing that at least 10,000 individuals had received it.[3]

At the conclusion of the conference, the Court granted AHS leave to file a motion for summary judgment and set the following briefing schedule, pursuant to which AHS will serve their motion on Plaintiff on February 6, 2014, and will conclude on March 20, 2104, when the parties file their submissions with the Court. Plaintiff stated he would not seek to delay or adjourn the summary judgment briefing schedule on the basis of his then-outstanding second attempted subpoena to Webjuice. (Dkt. 44 at 3 (Plaintiff reiterating that he has "not proposed a delay in the briefing schedule of AHS's summary-judgment motion").)

---

[3] The Court did not ask Plaintiff about the basis for his allegations that the recipients of the e-mail had not (1) provided direct consent to receive the e-mail, (2) made any inquiry about the products or services offered by AHS, (3) provided their e-mail addresses to AHS, or (4) made an application, purchase or transaction regarding products or services offered by AHS. (*Id*. at ¶ 19.)

4

II.	DISCUSSION

    A.	Legal Standard

A district court has broad discretion "to direct and manage the pre-trial discovery process." *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir. 2004). As part of that discovery process, Rule 16(b) of the Federal Rules of Civil Procedure requires district courts to enter scheduling orders that limit the parties' time to complete discovery. Fed. R. Civ. P. 16(b)(3). The order "shall not be modified except upon a showing of good cause" and only by leave of the district judge. *Id.;* 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990); *George v. Ford Motor Co.,* 03-CV-7643 (GEL), 2007 WL 2398806, at *12 (S.D.N.Y. Aug.17, 2007) (noting that discovery is governed by the scheduling order and "may not be conducted after the close of discovery absent good cause to modify that order."). Whether good cause exists "depends on the diligence of the moving party." *Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir. 2003); *see also McKay v. Triborough Bridge & Tunnel Auth.*, 05-CV-8936 (RJS), 2007 WL 3275918 (S.D.N.Y. Nov. 5, 2007) (citing Fed. R. Civ. P. 16 Advisory Committee's Note (party seeking modification must show that the deadline could not "reasonably be met despite the diligence of the party seeking" modification); Wright, Miller, and Kane, *supra* § 1522.1; *see also Vilkhu v. City of New York,* 06 Civ.2095 (CPS), 2007 WL 2713340, at *5 (E.D.N.Y. Sept. 13, 2007) (noting that, in assessing good cause, the Court should consider several factors, including "the diligence *vel non* of the party requesting an extension, bad faith *vel non* of the party opposing such extension, the phase of the litigation and prior knowledge of and notice to the parties") (internal citations and quotations omitted)).

B.   Plaintiff's Subpoena Request

Plaintiff seeks leave to subpoena documents from the former president and chief operating office of Webjuice three months after the close of discovery. (Dkt. 44-9.) Plaintiff offers no justification for his failure to comply with the discovery deadline in obtaining information from Webjuice, whose involvement in this case he has been aware of since at least July 2013. Rather, Plaintiff argues that his original subpoena seeking these documents was filed two days before the end of discovery and that AHS is not prejudiced by the service of the same subpoena after discovery. Given the current posture of this case, the Court does not find Plaintiff's arguments compelling or persuasive. *See Dunkin' Donuts Franchised Restaurants, LLC v. 1700 Church Ave. Corp.*, 07-CV-2446 (CBA) (MDG), 2008 WL 1947079 (E.D.N.Y. Apr. 24, 2008) ("When a [party] is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied.") (citation and quotation marks omitted).

In seeking to make a third attempt to subpoena Webjuice, Plaintiff cites Judge Reyes' prior ruling that Plaintiff's second attempt to serve the subpoena was not prejudicial to AHS. (Dkt. 44 at 3.) However, there are critical differences between the situation that existed at the time of Judge Reyes's ruling and now. Plaintiff's second subpoena attempt was made three weeks, not three months, after the close of discovery, and not in the midst of summary judgment briefing. AHS will serve its summary judgment motion on Plaintiff February 6, 2014, and that motion will be fully briefed by March 20, 2014. Permitting Plaintiff to conduct additional discovery in the midst of summary judgment briefing would clearly prejudice AHS and could result in the gross and inexcusable waste of the parties' and the Court's resources for at least

three reasons. First, there is little possibility that Plaintiff would receive the requested documents in time to make use of them without reneging on his representation that he would not seek to extend the briefing schedule to permit the introduction of the belatedly obtained evidence. Second, even if Plaintiff received documents from Webjuice, they would have to be authenticated, presumably through a deposition of the former Webjuice officer, before they could be considered by the Court in connection with the summary judgment proceedings. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); Fed. R. Civ. P. 56(e); *Axelrod & Cherveny, Architects, P.C. v. T. & S. Builders Inc.*, 943 F. Supp. 2d 357, 363 (E.D.N.Y. 2013) ("authentication 'is a precondition to consideration of documentary evidence on summary judgment.'") (quoting *Jay Dees Inc. v. Def. Tech. Sys., Inc.,* 2008 WL 4501652, at *6 (S.D.N.Y. Sept. 30, 2008)). Third, AHS has drafted and served its opening brief without the benefit of any Webjuice documents, and would, at a minimum, have to re-brief their motion, which would be unfair and unduly burdensome.

The Court acknowledges that, as Plaintiff argues, the Webjuice documents may well be relevant to his claims. If, in fact, Webjuice is responsible for sending the subject e-mail to Plaintiff and others, and had a contract with AHS or its agent to do so, these documents could be vital to establishing and defining the class, thereby meeting the CAFA jurisdictional requirement. However, the potential relevance of these documents was known to Plaintiff in July 2013, and yet he failed to take any action to obtain this information until two days before the close of discovery.

Plaintiff has failed to diligently and responsibly pursue this litigation, which has been pending for over three years. Plaintiff knew before he filed this lawsuit in September 2010 that it

7

was critical for him to obtain evidence as to the number and identity of the other purported recipients of the e-mail at issue and putative class members. As he admitted at the January 8, 2014 conference, at the time he filed the lawsuit, he had no specific information about who or how many others received the same e-mail but held only a "good faith" belief that at least 10,000 individuals or entities had. As Plaintiff is well aware, this evidence is necessary for him to meet the $5,000,000 jurisdictional threshold under CAFA. Yet, he appears to have done nothing until two days before the close of discovery, more than three years later, to obtain this vital evidence, despite having the necessary information to do so at least as of July 2013.[4] Nothing prevented Plaintiff from attempting to subpoena the Webjuice documents then, and Plaintiff offers no justification for failing to do so. Plaintiff also offers no information regarding his efforts to obtain the documents after initially attempting to subpoena them in October 2013, including explaining why he is just now, in February, 2014, learning that the company is no longer in operation. Thus, Plaintiff has not demonstrated the diligence required to upset the Court's discovery schedule. *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339-40 (2d Cir. 2000) (holding that a party seeking relief from the discovery schedule must demonstrate diligence and otherwise demonstrate good cause).

While it is true that Plaintiff served his initial subpoena for the Webjuice documents before the end of discovery, by waiting until almost the last day to do so, he ensured that any additional or related discovery would have to be conducted outside the discovery period and would threaten, as it has, to interfere with the filing of dispositive motions. Plaintiff chose at his

---

[4] Indeed, Plaintiff conceivably could have determined long before July 2013 that Webjuice was involved in sending the email since he knew at the time he received the email that it was sent by EclipseMediaOnline. (Dkt. 13 at ¶ 10, Exhibit A.) There is no indication that Plaintiff sought to subpoena EclipseMediaOnline at any point during the litigation, or that he sought to investigate on his own the identity of the sender of the e-mail.

8

own peril to wait, and the dilemma he finds himself in is self-created. He must now accept the consequences of that decision.

III.     CONCLUSION

Because Plaintiff has not justified his failure to timely obtain the documents he now seeks to subpoena, and because of the undue and unfair prejudice that would result if he were permitted to do so at this time, the Court denies Plaintiff's request for leave to serve a third-party subpoena.

SO ORDERED:

/s/
PAMELA K. CHEN
United States District Judge

Dated: February 5, 2014
       Brooklyn, New York

9